Hayes et al., Appellants, *v.* Wilkes-Barre.

Argued April 30, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Anthony P. Moses,* for appellants.

*Gifford Cappellini,* City Solicitor, with him *James F. Geddes, Jr.,* Assistant City Solicitor, for appellees.

OPINION PER CURIAM, June 27, 1969:

Judgment affirmed on the authority of *Templeton Appeal,* 399 Pa. 10, 159 A. 2d 725 (1960).

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Appellants were appointed policewomen by the City Council of Wilkes-Barre in 1964, after having successfully taken the requisite competitive civil service examination and proven themselves otherwise fit for the positions. This action was taken on the basis of a list submitted by the Chairman of the Police Civil Service Board. In January, 1968, the policewomen-appellants

were informed that because of certain irregularities in the 1964 hiring process and the fact that the positions to which they had been appointed had not been validly created, their services were being terminated immediately. At no time was it alleged by the municipal authorities that failure to satisfactorily perform any of the required duties of policewomen played any part in the decision to dismiss the appellants from further employment. Appellants promptly petitioned the court below to reinstate them to their original positions and award them back pay. Their prayer for relief was denied because the trial court understood the irregularities in the hiring process to be fatal to appellants' claim. The majority of this Court by its per curiam order affirms the lower court's decision. From this action, I am compelled to dissent.

From the opinion below, it is clear that the trial judge thought it was crucial for the appellants to "establish by evidence or pleadings the legal existence of the Police Civil Service Board and the necessary rules and regulations thereof" and that City Council followed "the mandate of the Civil Service provisions of the Third Class City Code as to a request to the Board for the four highest names for each vacancy and the nomination from such list." The hearing court reached "this conclusion reluctantly for the record and the pleadings are quite clear that there is no issue in these proceedings as to the competence, performance or diligence of petitioners in the discharge of their duties. It is similarly clear that the defects in the selection process involving petitioners were not defects in which petitioners participated but were procedures applied to the petitioners' selection by the Police Civil Service Board and the appointing authorities."

These conclusions by the court below underscore how unfortunate the majority's action is in affirming

the unmeritorious dismissals. In effect the allowance of technical procedural errors to defeat an otherwise valid civil service appointment four years after its effective date defeats the entire civil service system. All appointing authorities need do in order to make their civil service appointments effective *at their pleasure* is to allow slight variations from the specified procedure to creep into the appointive process. Then when the appointment no longer appears desirable as it once did, all the municipal officials have to do is track out their own errors (which are unknown to the appointees) as justification for removal. What an anomaly it is when blind adherence to the letter of the civil service law can defeat its essential purposes!

It is my view that although the trial judge may have felt bound to conclude that our Court appears to have abandoned "the harmless procedural irregularity concept promulgated in Steiner v. Reading, 341 Pa. 164," we must return to that concept if our civil service policy is to remain effective. Otherwise the evils inherent in this case may be repeated innumerable times at the mere whim of officials whose view of their original appointments may have soured. Such practice should not be tolerated. Surely government should not be permitted or encouraged to engage in conduct which jolts one's sense of justice and fair play. A private litigant could never successfully assert four years after the event his *own* technical omission or error as a basis for defeating the right or status of another acquired in good faith. Yet this is precisely what the majority countenances on the part of city council by sustaining so unjust a dismissal. The result here reached is, in my judgment, clearly not in the public interest.*

---

* To emphasize this point, it should be noted that the policemen appointed at the same time as appellants remain on the force and no challenge has been lodged against their appointments.

In addition, it might be argued that the result reached by the lower court could be affirmed on a ground which it rejected, namely, that the positions to which appellants were appointed had not been legally created. However, I believe the trial court was correct in concluding that the budget ordinance which provided the salaries for these positions was sufficient authorization, even if the original ordinance dealing with police affairs did not provide for these policewomen. The court below concluded "that the 1964 budget ordinance legally and effectively amended Ordinance 1090, by increasing the number of policemen (i.e., "patrolmen") from seventy to seventy-three and by creating the positions of policewomen." The fact that the amending ordinance was a Budget Ordinance in no way diminishes from its ability to effectively amend the first item.

Therefore, I dissent and would reinstate these employees with back pay.

Mr. Chief Justice BELL joins in this opinion.